T.C. Memo. 2008-150

UNITED STATES TAX COURT

PATRICIA M. MIDDLETON, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 4706-06L.                    Filed June 11, 2008.

<u>Alvin S. Brown</u>, for petitioner.

<u>Melinda K. Fisher</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

CHIECHI, <u>Judge</u>:  This case arises from a petition filed in
response to a notice of determination concerning collection

action(s) under section 6320[1] and/or 6330 (notice of determination).

The issues for decision are:

(1) Does petitioner have the underlying tax liability that respondent determined for her taxable year 2001?  We hold that she does.

(2) Did respondent's Appeals Office abuse its discretion in determining to sustain the collection action as determined in the notice of determination?  We hold that it did not.

### FINDINGS OF FACT[2]

All of the facts in this case, which the parties submitted under Rule 122, have been stipulated by the parties and are so found except as stated below.

At all relevant times, including at the time she filed the petition in this case, petitioner resided in Alice Springs, Australia (Alice Springs).

Petitioner was an employee of TRW Overseas, Inc. (TRW), a United States Government contractor that provided certain ser- vices at the Joint Defense Space Research Facility/Joint Defense Space Communication System (joint defense facility).  The joint

---

[1]All section references are to the Internal Revenue Code in effect at all relevant times.  All Rule references are to the Tax Court Rules of Practice and Procedure.

[2]Unless otherwise indicated, our Findings of Fact and Opin- ion pertain to 2001, the year at issue.

defense facility is located at the Pine Gap Air Force base (Pine Gap base) in Pine Gap, Australia.

The Pine Gap base is approximately 20 miles from Alice Springs. As a condition of her employment by TRW, petitioner was required to, and did, accept certain assigned housing (petitioner's assigned housing) in Alice Springs, which had a population of approximately 28,000.[3] However, neither petitioner nor anyone else conducted any business of TRW or of the joint defense facility at petitioner's assigned housing.

Petitioner's assigned housing was located on a public street and was adjacent to houses that were available to the general public. Petitioner's assigned housing was (1) not located within the physical boundaries of the Pine Gap base, (2) not in a separately gated community, and (3) not in an area or enclave segregated for employees of TRW and unavailable to the general public.

Residents of Alice Springs included individuals who worked at the Pine Gap base and individuals who were unaffiliated with that base. Certain companies located in Alice Springs provided trash collection, sewage, utilities, and law enforcement services for the residents of Alice Springs. Petitioner did not pay any

---

[3]Petitioner's assigned housing in Alice Springs was subject to a so-called Joint Defense Facility Pine Gap Housing Handbook that was prepared in order to "clarify responsibilities of both the Joint Defence Facility Pine Gap (JDFPG) and the housing occupants."

rent or utility expenses with respect to petitioner's assigned housing.

As a further condition of her employment by TRW, petitioner was required to, and did, execute a closing agreement (petitioner's closing agreement) with the Internal Revenue Service in which TRW was identified as petitioner's employer. Pursuant to petitioner's closing agreement, petitioner agreed to (1) waive her right to elect a foreign earned income exclusion under section 911(a) for her taxable year 2001 with respect to the services that she performed for TRW at the joint defense facility and (2) attach a copy of that agreement to her Federal income tax (tax) return for that year.

Petitioner and her spouse, Robert J. Middleton (Mr. Middleton),[4] filed Form 1040, U.S. Individual Income Tax Return (petitioner's 2001 return), for their taxable year 2001. In that return, petitioner reported on page 1 "Other income" of zero. In doing so, petitioner claimed that the Department of the Air Force furnished to her certain housing (petitioner's claimed Air Force housing) valued at $7,154 that was excludable under section 119. Although petitioner was required by petitioner's closing agreement to attach a copy of that agreement to petitioner's 2001 return, she did not do so.

---

[4]Mr. Middleton is not a petitioner in the instant case. Hereinafter, we shall refer only to petitioner.

On April 23, 2004, respondent issued to petitioner a notice of deficiency with respect to, inter alia, her taxable year 2001 (2001 notice of deficiency), in which respondent determined a $2,016 deficiency in tax for that year (2001 deficiency).[5]  In making that deficiency determination, respondent determined that the $7,154 of petitioner's claimed Air Force housing is not excludable under section 119.

On November 15, 2004, respondent assessed tax of $2,016 and interest as provided by law of $275.93 for petitioner's taxable year 2001.  (We shall refer to any unpaid assessed amounts with respect to petitioner's taxable year 2001, as well as interest as provided by law after November 15, 2004, as petitioner's unpaid 2001 liability.)

On July 2, 2005, respondent issued to petitioner a final notice of intent to levy and notice of your right to a hearing (notice of intent to levy) with respect to petitioner's unpaid 2001 liability.[6]

On July 20, 2005, respondent received from petitioner Form 12153, Request for a Collection Due Process Hearing (petitioner's

---

[5]The 2001 notice of deficiency also pertained to petitioner's taxable year 2000.  That year is not at issue here.

[6]The parties stipulated that respondent issued to petitioner the notice of intent to levy to collect "an unpaid balance" of $2,291.93 for her taxable year 2001, which was the total of the tax and interest for that year that respondent assessed on Nov. 15, 2004.

Form 12153), with respect to the notice of intent to levy.  In that form, petitioner indicated her disagreement with the notice of intent to levy and requested a hearing with respondent's Appeals Office (Appeals Office).[7]  In support of her disagreement with the notice of intent to levy, petitioner gave the following explanation:

> 1.  Collection alternatives are available.
> 2.  Levy creates financial hardship.
> 3.  offer in compromise based on no liability has been sent to service center.[8]  [Reproduced literally.]

By letter to petitioner dated October 4, 2005, the Appeals Office acknowledged receipt of petitioner's Form 12153 and notified her that a settlement officer with the Appeals Office (settlement officer) would be contacting her in the near future. The Appeals Office sent a copy of that letter to petitioner's representative, Alvin S. Brown (Mr. Brown).

---

[7]In petitioner's Form 12153, petitioner requested a hearing with the Appeals Office with respect to her taxable years 2000 through 2005.  However, the notice of intent to levy did not pertain to her taxable years 2000 and 2002 through 2005, and those years are not at issue here.  In fact, as of July 20, 2005, the date on which respondent received petitioner's Form 12153, respondent had not issued to petitioner a notice of Federal tax lien filing and your right to a hearing or a notice of intent to levy with respect to her taxable years 2000 and 2002 through 2005.

[8]Petitioner attached Form 656, Offer in Compromise (petitioner's Form 656), dated Feb. 22, 2005, to petitioner's Form 12153.  Petitioner's Form 656 did not pertain to petitioner's taxable year 2001; it pertained only to petitioner's taxable years 2000 and 2002.

The settlement officer sent Mr. Brown a letter dated October 17, 2005 (October 17, 2005 letter).  That letter stated in pertinent part:

> Appeals received your request on behalf of Patricia M. Middleton for a Collection Due Process (CDP) Hearing. I have scheduled a telephone conference call for you on <u>November 2, 2005</u> at <u>9am</u>.  This call will be the tax-payer's CDP hearing.
>
> \*        \*        \*        \*        \*        \*        \*
>
> Your CDP hearing request regarding proposed levy action on the following tax period was timely:  Form 1040, for tax period December 31, 2001.  During your hearing, and until any appeals become final for these tax and peri-ods, the legal collection period is suspended and no levy action may be taken.
>
> During the hearing, I must consider:
>
> - Whether the IRS met all the requirements of any applicable law or administrative procedure
>
> - Any relevant issues you wish to discuss.  These can include:
>
>   1.  Collection alternatives to levy such as full payment of the liability, installment agreement, offer in compromise or temporary delay of collection action. \* \* \*
>
>   2.  Challenges to the appropriateness of collection action. \* \* \*
>
>   3.  Spousal defenses, when applicable.
>
> - We may also consider whether you owe the amount due, but **only if** you have not otherwise had an opportunity to dispute it with Appeals or did not receive a statutory notice of deficiency.

- We will balance the IRS' need for efficient tax collection and your legitimate concern that the collection action be no more intrusive than necessary.

\* \* \* \* \* \* \*

For me to consider alternative collection methods such as an installment agreement or offer in compromise, you must provide any items listed below. In addition, you must have filed all federal tax returns due.

- A completed Collection Information Statement (Form 433-A for individuals and/or Form 433-B for businesses.)

- Proposal to pay.

- The hearing request indicates that an offer in compromise may be filed. There is no record that an offer is currently under investigation.

Please send me the items prior to the hearing date. I cannot consider collection alternatives in your hearing without the information requested above.

\* \* \* \* \* \* \*

If you do not participate in the conference or respond to this letter, the determination and/or decision letter that we issue will be based on your CDP request, any information you previously provided to this office about the applicable tax periods, and the Service's administrative file and records.

\* \* \* \* \* \* \*

Please contact me with any questions or concerns you have regarding this letter or the CDP procedures. \* \* \*

Neither petitioner nor Mr. Brown contacted the settlement officer on November 2, 2005, with respect to the settlement officer's October 17, 2005 letter, and no telephonic conference was held.

The settlement officer sent Mr. Brown a letter dated November 2, 2005.  In that letter, the settlement officer informed Mr. Brown that, if petitioner wanted to present any additional information and/or arguments with respect to the notice of intent to levy, he should contact the settlement officer by November 17, 2005.

On November 4, 2005, Mr. Brown telephoned the settlement officer.  During that telephonic discussion, Mr. Brown argued that the 2001 deficiency was wrong because the $7,154 of petitioner's claimed Air Force housing is excludable from petitioner's income for her taxable year 2001.  In advancing that argument, Mr. Brown pointed out to the settlement officer that in certain cases pending in the Court (pending Tax Court cases) certain residents of Alice Springs were making the same arguments that petitioner was making with respect to the taxation of employer-furnished housing.

By letter dated November 4, 2005, the settlement officer informed Mr. Brown that petitioner was not entitled to challenge the underlying tax liability for her taxable year 2001.  In that letter, the settlement officer requested Mr. Brown to present to the Appeals Office by November 17, 2005, a proposal for resolving petitioner's unpaid 2001 liability.

On November 14, 2005, Mr. Brown telephoned the settlement officer and informed him (1) that he intended to provide respon-

dent with additional information by November 21, 2005, and (2) that the Court had scheduled the pending Tax Court cases for trial on November 23, 2005.

On December 15, 2005, the date on which the settlement officer had begun drafting a notice of determination with respect to petitioner's taxable year 2001, Mr. Brown telephoned the settlement officer. Mr. Brown informed the settlement officer that the Court had not yet decided the pending Tax Court cases and that he wanted to raise certain treaty issues in support of petitioner's position with respect to the underlying tax liability for her taxable year 2001. Out of consideration for petitioner's arguments regarding the pending Tax Court cases, the settlement officer delayed for six weeks the completion of the notice of determination with respect to that year.[9]

As of January 31, 2006, the date on which the settlement officer completed drafting the notice of determination with respect to petitioner's taxable year 2001, the Court had not yet

---

[9]The parties stipulated that, out of consideration for petitioner's argument regarding the pending Tax Court cases, the settlement officer delayed for six weeks the completion of the "Notice of Deficiency". That stipulation is clearly contrary to the facts that we have found are established by the record, and we shall disregard it. See Cal-Maine Foods, Inc. v. Commissioner, 93 T.C. 181, 195 (1989). The record establishes, and we have found, that, out of consideration for petitioner's arguments regarding the pending Tax Court cases, the settlement officer delayed for six weeks the completion of the notice of determination with respect to petitioner's taxable year 2001.

decided the pending Tax Court cases.[10]  Nor had petitioner pro-
vided the settlement officer with a proposal of a collection
alternative for petitioner's unpaid 2001 liability.  As of Janu-
ary 31, 2006, the only argument that Mr. Brown had presented to
the settlement officer with respect to the notice of intent to
levy was that respondent was wrong in determining in the 2001
notice of deficiency that the $7,154 of petitioner's claimed Air
Force housing is not excludable from petitioner's income for her
taxable year 2001.

On February 6, 2006, the Appeals Office issued to petitioner
a notice of determination with respect to her taxable year 2001.
That notice stated in pertinent part:

> Prior to issuing the Intent To Levy, all statutory
> administrative and procedural requirements were met by
> the Internal Revenue Service.  No viable alternatives
> to such action were established during Appeals consid-
> eration; accordingly, such action is not considered to
> be overly intrusive at this time.  The determination of
> the Appeals Office is to sustain the issuance of the
> Intent to Levy.

The notice of determination included an attachment that stated in
pertinent part:

### SUMMARY AND BACKGROUND

> The taxpayer submitted a timely request for a Collec-
> tion Due Process Hearing in response to the issuance of
> an Intent to Levy.  The enforcement actions were taken

---

[10]It was not until Aug. 8, 2006, that the Court issued
Hargrove v. Commissioner, T.C. Memo. 2006-159, in the pending Tax
Court cases, which the Court had consolidated for purposes of
briefing and opinion.

by the Automated Collection System of the IRS. The collection action was taken after notice and demand was issued and the accounts remained unpaid. A levy source was identified.

    *        *        *        *        *        *        *

By letter dated October 17, 2005 a telephone Collection Due Process hearing was scheduled for November 2, 2005. The taxpayer was asked to forward a collection information statement and proposal to pay prior to the hearing. No response was received.

By letter dated November 2, 2005 the Settlement Officer requested that any additional information to be considered be forwarded by November 17, 2005.

A hearing was held via telephone on November 4, 2005 with the taxpayer's power of attorney, Alvin S. Brown.

By letter dated November 4, 2005 the taxpayer was advised to provide a proposal to pay the liability by November 17, 2005. The taxpayer was advised that a determination letter would be issued after this date. The taxpayer made no proposal and did not submit a collection information statement.

The determination of the Appeals Office is to sustain the Intent to Levy.

## Applicable Law and Administrative Procedures

With the best information available, the requirements of various applicable law or administrative procedures have been met.

Internal Revenue Code (IRC) section 6331(d) requires that the Internal Revenue Service (IRS) notify a taxpayer at least 30 days before a Notice of Levy can be issued. Our case history shows that this notice was mailed to the taxpayer.

IRC section 6330(a) provides that no levy may be made unless the IRS notifies a taxpayer of the opportunity for a hearing with the IRS Office of Appeals. <u>A FINAL NOTICE - NOTICE OF INTENTION TO LEVY AND YOUR RIGHT TO A HEARING</u> was sent by certified mail.

Under I.R.C. 6330 an individual may challenge the correctness of the liability through a collection due process hearing unless the individual received a statutory notice of deficiency or other administrative appeal rights.  IRS records show that a statutory notice of deficiency was issued and appealed by the taxpayer. The decision of the Appeals Office was to sustain the proposed assessment.  There is no record that the taxpayer timely petitioned the tax court.

The taxpayer was given the opportunity to raise any relevant issue relating to the unpaid tax or the proposed levy at the hearing in accordance with IRC 6330(c).

     *       *       *       *       *       *       *

## Relevant Issues Presented by the Taxpayer

The request for a hearing indicates that the taxpayer wants consideration of collection alternatives such as installment agreement and offer in compromise.

A collection due process hearing was held by telephone on November 4, 2005 and through correspondence with the taxpayer's power of attorney.

The main concern raised at the hearing involves the correctness of the liability.  The taxpayer believes that she is entitled to exclude from gross income the value of lodging furnished by her employer.  The power of attorney noted that there were related taxpayers currently in court contesting this same issue.  As a statutory notice of deficiency was received, the taxpayer may not challenge the liability through this hearing.  The taxpayer did not petition the court, the assessment was made and collection actions were not suspended.  To challenge the liability the taxpayer may full pay the account; file a timely claim for refund; and timely petition the appropriate court.  The related court cases have not been closed.

As the taxpayer did not submit requested financial information, collection alternatives may not be considered at this time.

The taxpayer raised no other issues and provided no other alternatives to the proposed collection action.

OPINION

The parties submitted this case fully stipulated under Rule 122. That the parties submitted this case under that Rule does not affect who has the burden of proof or the effect of a failure of proof. Rule 122(b); <u>Borchers v. Commissioner</u>, 95 T.C. 82, 91 (1990), affd. 943 F.2d 22 (8th Cir. 1991).

The parties disagree over whether the burden of proof in this case shifts to respondent under section 7491(a). We need not, and we shall not, address that disagreement. That is because resolution of the issues presented here does not depend on who has the burden of proof.

Respondent concedes that petitioner is entitled to dispute the underlying tax liability for her taxable year 2001.[11] Where the validity of the underlying tax liability is properly placed at issue, the Court will review the determination of the Commissioner of Internal Revenue on a de novo basis. <u>Sego v. Commissioner</u>, 114 T.C. 604, 610 (2000).

It is petitioner's position that she does not have the underlying tax liability that respondent determined for her taxable year 2001. In support of that position, petitioner argues that she is entitled to exclude from gross income (1) under section 119(a) the $7,154 of petitioner's claimed Air

---

[11]Respondent makes that concession "Because respondent cannot show that petitioner actually received the notice of deficiency regarding her 2001 tax year". See sec. 6330(c)(2)(B).

Force housing and (2) under section 912 certain cost-of-living allowances that petitioner claims she received (petitioner's claimed cost-of-living allowances).[12]  In advancing those arguments, petitioner concedes that the facts in this case are similar to the facts in <u>Hargrove v. Commissioner</u>, T.C. Memo. 2006-159,[13] a case involving the taxation under sections 119 and 912, respectively, of employer-furnished housing and claimed living allowances.[14]  We find that the facts in this case are not materially distinguishable from the facts in <u>Hargrove</u>.

---

[12]The only allowances that petitioner maintains she is entitled to exclude under sec. 912 are petitioner's claimed cost-of-living allowances.  See sec. 912(2).  Petitioner does not maintain that she is entitled to exclude under sec. 912 any allowances described in sec. 912(1) or (3).

With respect to petitioner's argument that she is entitled to exclude from gross income under sec. 912 petitioner's claimed cost-of-living allowances, respondent points out that petitioner did not allege in the petition that she was entitled to exclude any amount from gross income under that section.  According to respondent, petitioner has therefore conceded that issue under Rule 331(b)(4).  Petitioner did not expressly allege in the petition that she is entitled to exclude from gross income under sec. 912 the cost-of-living allowances that she claims she received.  However, pleadings are to be construed as to do substantial justice.  Rule 31(d).  Moreover, we find no prejudice to respondent.  In fact, as discussed below, we reject petitioner's argument under sec. 912.

[13]We note that Mr. Brown, petitioner's counsel of record in the instant case, was a counsel of record for the taxpayers in <u>Hargrove v. Commissioner</u>, T.C. Memo. 2006-159.

[14]The Court in <u>Hargrove</u> also considered whether to sustain respondent's determinations under sec. 6662(a).  In the 2001 notice of deficiency issued to petitioner, respondent did not make a determination under sec. 6662(a).

Although the facts here are materially the same as the facts in <u>Hargrove</u>, it is petitioner's position that the Court erred in holding in <u>Hargrove</u> that the taxpayers there involved were not entitled to exclude (1) under section 119 the value of employer-furnished housing and (2) under section 912 certain claimed living allowances.[15]  In support of that position, petitioner advances the same arguments under sections 119 and 912 that the taxpayers advanced in <u>Hargrove</u>,[16] including the arguments under those sections based on the treaty under which the joint defense facility was established, see Agreement Relating to the Establishment of a Joint Defence Space Research Facility, U.S.-Austl.,

---

[15]<u>Hargrove</u> involved several consolidated cases.  All of the taxpayers there involved argued that they were entitled to exclude from gross income under sec. 119 the value of employer-furnished housing.  <u>Hargrove v. Commissioner</u>, <u>supra</u>.  Certain of those taxpayers also argued that they were entitled to exclude from gross income under sec. 912 certain claimed living allowances.  <u>Id.</u>  As was true with respect to those taxpayers in <u>Hargrove</u> who advanced that argument under sec. 912, the record here does not establish that petitioner received the cost-of-living allowances that she claims she received.

[16]Petitioner's arguments on brief here are the same as the taxpayers' arguments on brief in <u>Hargrove</u>, of which the Court takes judicial notice.

Dec. 9, 1966, 17 U.S.T. 2235 (Treaty).[17]  In effect, petitioner is asking the Court to overrule Hargrove.

The Court in Hargrove carefully considered and rejected all of the arguments under sections 119 and 912 that the taxpayers advanced, including the arguments under those sections based on the Treaty.  We have carefully reviewed and considered Hargrove. We decline petitioner's request to overrule it.

On the record before us, we hold that petitioner is not entitled to exclude from gross income under section 119(a) the $7,154 of petitioner's claimed Air Force housing.  See id.  On that record, we further hold that petitioner is not entitled to exclude from gross income under section 912 petitioner's claimed cost-of-living allowances.[18]  See id.  On the record before us, we

------

[17]The Treaty, which authorized the joint defense facility, became effective on Dec. 9, 1966.  Agreement Relating to the Establishment of a Joint Defence Space Research Facility, U.S.-Austl., Dec. 9, 1966, 17 U.S.T. 2235.  Since 1966, the Treaty has been amended and extended.  Agreement Amending and Extending the Agreement of Dec. 9, 1966, U.S.-Austl., Oct. 19, 1977, 29 U.S.T. 2759; Agreement Amending and Extending the Agreement of Dec. 9, 1966, As Amended and Extended, U.S.-Austl., Nov. 16, 1988, T.I.A.S. 12266; Agreement Extending the Agreement of Dec. 9, 1966, As Amended and Extended, Relating to the Establishment of a Joint Defence Facility at Pine Gap, U.S.-Austl., June 4, 1998, Temp. State Dept. No. 00-102.

[18]As was true with respect to the taxpayers in Hargrove who argued that they were entitled to exclude from gross income under sec. 912 certain claimed living allowances, assuming arguendo that the record here had established that petitioner received petitioner's claimed cost-of-living allowances, see supra note 15, such allowances would not be excludable under sec. 912.  See Hargrove v. Commissioner, supra.

hold that petitioner has the underlying tax liability that respondent determined for her taxable year 2001.

We turn now to whether the Appeals Office abused its discretion in determining to sustain the collection action as determined in the notice of determination. Although the Appeals Office erred in determining in that notice that petitioner was not entitled to challenge the underlying tax liability for her taxable year 2001, that error was harmless. We have found that petitioner has the underlying tax liability that respondent determined for her taxable year 2001. On the record before us, we hold that the Appeals Office did not abuse its discretion in determining to sustain the collection action as determined in the notice of determination.

We have considered all of the contentions and arguments of petitioner that are not discussed herein, and we find them to be without merit, irrelevant, and/or moot.

To reflect the foregoing,

<u>Decision will be entered for</u> <u>respondent</u>.